IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| ROBERT EARL TIPPENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:19CV369–HEH |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | |
| CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
**(Granting Motion for Summary Judgment)**

Robert Earl Tippens, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983.[1] The matter is proceeding on Tippens's Second Amended Complaint (ECF No. 35). Tippens alleges that he has "a rare, multiple food allergy condition." (*Id.* at 3.)[2] Tippens contends that he is entitled to relief upon the following grounds:

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from the parties' submissions. The Court corrects the spelling of the defendants' names in accordance with the spelling set forth in the Memorandum in Support of the Motion for Summary Judgment. (ECF

| | |
|---|---|
| Claim A | Dr. Cortez Hernandez Martines violated Tippens's constitutional rights by failing to adequately and timely test Tippens to diagnose his food allergies. (*Id.* at 4.) |
| Claim B | The Virginia Department of Corrections ("VDOC") violated Tippens's Eighth Amendment rights by continuing to "accidently feed" Tippens food contrary to Tippens's "multiple food allergen condition." (*Id.*) |
| Claim C | Food Service Supervisor Powell violated Tippens's Eighth Amendment rights by following the VDOC special food diet guidelines and serving Tippens rice and potatoes for every meal. (*Id.* at 5.) |
| Claim D | The VDOC violated Tippens's rights because its special diet guidelines, as applied to Tippens, results in Tippens consuming rice and potatoes at every meal, which endangers Tippens's health. (*Id.*) |
| Claim E | On May 6, and June 11, 2019, Food Service Supervisor Malone violated Tippens's rights by serving Tippens grits when Tippens is allergic to corn and then replacing the grits with potatoes. (*Id.*) |
| Claim F | Food Service Director Morgan violated Tippens's rights by telling him that the two times he was served butter, which contained soy, to which Tippens was allergic, was an honest mistake. (*Id.* at 6.) |
| Claim G | On June 12, 2019, Defendants Hudgins and Edwards, because they were biased against Tippens, served Tippens ground chicken, while the rest of the population received "real chicken." (*Id.*) |

Defendants VDOC, Powell, Malone, Morgan, Robinson, and Hudgins (collectively, "Defendants") moved for summary judgment on the grounds that, *inter alia*, Tippens failed to exhaust his administrative remedies. Tippens has responded. For

---

No. 51, at 1–2.) The Clerk will be directed to correct the spelling of Defendant Hudgins's name on the docket.

2

the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 50) will be granted.[3]

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

Defendants ask the Court to dismiss Tippens's claims because Tippens failed to exhaust his administrative remedies prior to filing the action as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense,

---

[3] Tippens added Edwards as a defendant in his Second Amended Complaint, which was filed after the Court directed service on Defendants. Although Edwards has not responded, it is apparent that Claim G against him is subject to dismissal for lack of exhaustion.

3

Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In support of their prior Motions for Summary Judgment, Defendants submitted: (1) the Affidavit of L. Kinley, the Grievance Coordinator at Dillwyn Correctional Center ("Dillwyn") ("Kinley Aff.," ECF No. 51–1); (2) a copy of VDOC's Operating Procedure § 866.1 ("Grievance Procedure," ECF No. 51–2, at 1–14); and, (3) copies of Tippens's various informal complaints, grievances, letters, and appeals (ECF No. 51–2, at 15–55). Tippens responded by submitting, among other things: his own declaration ("Tippens Decl.," ECF No. 69), a declaration under Fed. R. Civ. P. 56(d) ("56(d) Decl.," ECF No. 69–3);[4] an affidavit from Herbert Dorman ("Dorman Aff.," 69–2); and, copies of some of his grievance materials (ECF No. 69–1). Additionally, Tippens's Second Amended Complaint is sworn to under penalty of perjury.[5]

Nevertheless, the facts offered by a sworn declaration must also be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). In this regard, the statement in the sworn declaration "must be made on personal knowledge, set out facts that would be

---

[4] In his 56(d) Declaration, Tippens insists that extra time is needed to conduct discovery to show that Defendants subjectively knew their conduct posed a substantial risk of serious harm to Tippens. (56(d) Decl. 1.) That issue, however is not the subject of Defendants' Motion for Summary Judgment. The record does not indicate that further discovery is necessary to assess whether Tippens has exhausted his administrative remedies prior to filing this action.

[5] Although there are a host of other documents in the record, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only cited materials, but it may consider other materials in the record.").

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). Accordingly, Tippens's "[a]iry generalities [and] conclusory assertions" that he exhausted his administrative remedies "[do] not suffice to stave off summary judgment." *McManus v. Wilson*, No. 3:13CV460–HEH, 2015 WL 3444864, at *6 (E.D. Va. May 28, 2015) (alterations in original) (quoting *United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004)).

In light of the foregoing principles and submissions, the facts set forth below are established for purposes of the Motion for Summary Judgment. All permissible inferences are drawn in Tippens's favor. Furthermore, given that Tippens was required to exhaust his administrative remedies prior to filing the action, the Court generally limits its recitation of pertinent facts prior to Tippens's filing of the action on May 16, 2019. (ECF No. 1.)

## II. Summary of Pertinent Facts

### A.   VDOC's Grievance Procedure

Operating Procedure § 866.1, Inmate Grievance Procedure, is the mechanism used to resolve inmate complaints. (*See* Kinley Aff. ¶ 4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (Grievance Procedure § 866.1.V.A.) Generally, a good faith effort requires

the inmate to submit an informal complaint form. (*Id.* § 866.1.V.A.1–2.) If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.3 (emphasis added).) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to ensure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in the system on the day it is received, and a "Grievance Receipt" is issued to the inmate within two working days. (*Id.* § 866.1.VI.B.3 (emphasis added).) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the

6

grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

### 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, where a review is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

The exhaustion requirement will be met only when a regular grievance has been appealed through the highest eligible level without satisfactory resolution of the issue. (*Id.* § 866.IV.O.2.)

### B. Facts Pertaining to Tippens's Exhaustion of Administrative Remedies

On April 10, 2019, Tippens filed an informal complaint wherein he stated that he was transferred to Haynesville on March 20, 2019, because of a rare multiple food allergy. (ECF No. 51–2, at 15.) Tippens complained that, on March 21, 2019, he was served food to which he was allergic. (*Id.*) Prison staff responded that they would make sure kitchen staff coordinated with the medical department to provide Tippens with a diet

7

free of items to which he was allergic. (*Id.* at 16.) Tippens did not pursue a regular grievance with respect to this informal complaint. (Kinley Aff. ¶ 11.)

On April 11, 2019, Tippens submitted an emergency grievance wherein he complained that twice that month he was served food with butter although he is allergic to the soy in the butter. (ECF No. 51–2, at 17.) Prison staff told Tippens to file an informal complaint. (*Id.*) Tippens did not file an informal complaint with respect to this issue. (Kinley Aff. ¶ 12.)

On May 2, 2019, Tippens submitted an informal complaint wherein he complained that on April 2, 2019, butter was placed on his tray a second time and then merely scraped off when he complained. (ECF No. 51–2, at 20.) Tippens complained that no effort was made to keep the butter from leaking into his other food. (*Id.*) Ms. Haislip responded, noting that it was an honest mistake and she would prepare him a new tray. (*Id.* at 20–21.) When she prepared the new tray, Tippens already had left the dining hall. (*Id.* at 21.)

On May 16, 2019, Tippens filed his original complaint. (ECF No. 1.) On May 21, 2019, Tippens submitted a regular grievance regarding the April 2, 2019 butter incident. (ECF No. 51–2, at 18.) Tippens stated "once can be an honest mistake, but putting butter in my food, or on my tray more than once is a bit much." (*Id.*) Tippens noted that on April 27, and April 28, 2019, prison staff again placed butter on his tray. (*Id.*) Grievance Coordinator Kinley rejected that grievance at intake because it had not been filed within thirty days of the April 2, 2019 incident. (*Id.* at 19.) Tippens did not appeal that intake decision. (Kinsley Aff. ¶ 13.)

8

On May 13, 2019, Tippens submitted an informal complaint complaining that, from March 21, 2019 until April 25, 2019, he had not been fed anything but rice and boiled potatoes for three meals a day. (*Id.* ¶ 14.) Prison staff responded that his tray also contained protein in the form of chicken, peanut butter, etc. (*Id.*) Tippens did not pursue a regular grievance regarding this informal complaint. (*Id.*)

On May 13, 2019, prison staff received an informal complaint from Tippens regarding the placement of butter on his tray on April 27 and April 28, 2019. (ECF No. 51–2, at 26.) On May 20, 2019, Prison staff responded and directed Tippens to contact the supervisor so corrections could be made. (*Id.*) The receipt stamps in the record indicate that Tippens did not attach this informal complaint to any subsequently filed regular grievance.

On May 24, 2019, Tippens submitted an informal complaint wherein he complained that he had been served "ground chuck 'chicken'" that makes him sick. (ECF No. 51–2, at 28.) Food Service Specialist Powell responded that he was receiving the ground chicken to accommodate Tippens's dietary needs and informed Tippens that the chicken was not a processed meat. (*Id.*) Tippens did not pursue a regular grievance with respect to this issue. (Kinsley Aff. ¶ 16.)

On June 7, 2019, Tippens submitted an informal complaint wherein he complained that, on June 6, 2019, he was served grits for breakfast. (ECF No. 51–2, at 32.) On June 14, 2019, Food Service Specialist Malone responded that the matter had been brought to his attention on June 13, 2019. (*Id.*) Malone acknowledged the mistake and stated that he would work with the cooks and the window attendant to prevent this mistake from

9

happening again. (*Id.*) On June 21, 2019, Tippens submitted a regular grievance wherein he complained: (1) he did not receive a response to his informal complaint until June 20, 2019 and that (2) the problem of service of incorrect food continued to occur. (*Id.* at 31.) Grievance Coordinator Kinsley rejected the grievance because she found that it contained more than one issue. (*Id.*) Tippens appealed that intake decision. (*Id.*) The Regional Ombudsman upheld the intake decision. (*Id.*)

On June 14, 2019, Tippens submitted an informal complaint regarding the fact that, on June 12, 2019, he was served "process[ed] ground chicken" for dinner while the other inmates received "real chicken." (*Id.* at 37.) Tippens stated that he would be filing a lawsuit. (*Id.*) On June 22, 2019, Food Service Specialist Powell responded that the chicken served to other inmates contained tomato seasoning and soy which was incompatible with Tippens's allergies. (*Id.* at 38.) Tippens was served ground chicken, which was compatible with his dietary restrictions. (*Id.*) On July 3, 2019, Tippens filed a regular grievance regarding this issue. (*Id.* at 36.) The Warden investigated the issue and determined that Tippens's grievance was unfounded. (*Id.* at 34.) Tippens did not appeal the denial of his grievance. (Kinsley Aff. ¶ 18.)

On June 18, 2019, Tippens submitted a regular grievance wherein he complained that, on June 6, 2019, he had submitted an informal complaint about the food service serving him grits. (ECF No. 51–2, at 45.) Tippens complained that two weeks had passed and he had yet to receive a response. (*Id.*) Grievance Coordinator rejected the grievance at intake, noting Tippens had not used the informal process to resolve the

10

complaint, because the next action date for a response to his informal complaint was June 22, 2019. (*Id.* at 46.) Tippens did not appeal that decision. (Kinsley Aff. ¶ 20.)

On June 21, 2019, Tippens submitted an informal complaint, wherein he complained that the food service guideline concerning multiple food allergies profile was unconstitutional. (ECF No. 51–2, at 50.) Tippens complained that, *inter alia*, the service of rice and potatoes to him at every meal would eventually cause him diabetes. (*Id.*) Ms. Morgan responded that Dillwyn Food Service Department supplements Tippens's diet in accordance with the Food Service Manual Therapeutic Handbook and that Food Service staff acted in compliance with the VDOC guidelines. (*Id.*) On July 9, 2019, Tippens submitted a regular grievance wherein he reiterated the complaints from his informal complaint. (*Id.* at 49.) On August 14, 2019, the Warden responded to Tippens's grievance, determined that Food Service staff were acting appropriately, and determined the grievance to be unfounded. (*Id.* at 47.) Tippens did not appeal that decision to the Regional Administrator. (Kinsley Aff. ¶ 21.)

### III. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, the inmate

11

must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that § 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

In addition, and of particular importance here, "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. . . . If exhaustion was not completed at the time of filing, dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "[E]xhaustion pendente lite undermines the objectives of section 1997e(a) and . . . the language of section 1997e(a) clearly contemplates exhaustion prior to the commencement of the action as an indispensable requirement, thus requiring outright dismissal of such actions . . . ." *Id.* at 628.

Here, Tippens filed his original complaint on June 16, 2019. As of that date, Tippens had not filed a grievance with respect to any of his claims and pursued it through all levels of appeal. Therefore, Claims B through G against Defendants will be dismissed without prejudice.[6]

---

[6] Defendant Dr. Cortez Hernandez Martines has not filed a Motion for Summary Judgment as to Claim A. Therefore, Claim A remains pending.

As explained by the United States Court of Appeals for the Fourth Circuit, the lone exception to the PLRA's exhaustion requirement is found in the text itself: "A prisoner need not exhaust remedies if they are not 'available.'" *Germain v. Shearin*, 653 F. App'x 231, 232 (4th Cir. 2016) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016)). The Supreme Court has identified three circumstances where remedies are considered not available to a prisoner:

> (1) where the procedure "operates as a simple dead end" because officials are "unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) where the grievance process itself is so incomprehensible that "no ordinary prisoner can discern or navigate it [;]" and (3) where administrators prevent inmates from availing themselves of remedies by way of "machination, misrepresentation, or intimidation."

*Id.* at 232–33 (alterations in original) (citation omitted).

The record does not indicate that the grievance process was not available to Tippens. Instead, the record indicates that Tippens filed a flurry of informal complaints and grievances. Prison officials sometimes refused to process Tippens's grievances because he failed to comply with the relevant intake procedures. Tippens remained free to correct the deficiency and resubmit the grievance in the proper manner. He simply failed to do so. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 50) will be granted, and Tippens's Motion for Summary Judgment (ECF No. 48) will be denied. Tippens's Motion Opposing Defendants' Motion for Summary Judgment (ECF No. 66) and Motion to Deny Defendants' Motion for Summary Judgment (ECF No. 78) will be denied.

## IV. Outstanding Motions

Tippens has flooded the Court with a host of motions, the vast majority of which are frivolous. Tippens's Motion to Strike Defendants' Motion for Extension of Time (ECF No. 57) will be denied. Tippens's Motion for a Jury Trial (ECF No. 58) will be granted to the extent the Clerk will note the jury demand on the docket, but to the extent he seeks an immediate jury trial, the Motion (ECF No. 58) will be denied. Because Tippens fails to demonstrate any defendant is in default, his Renewed Motion for Entry of Default and Default Judgment (ECF No. 64) and his request for mandamus relief with respect to default (ECF No. 97) will be denied. Tippens's Motion for Permission to Appeal (ECF No. 70) will be denied.

Tippens submitted a Motion for Relevant Evidence in Opposition to Defendants' Motion for Summary Judgment. (ECF No. 68.) In conjunction with that motion, Tippens submitted documents reflecting that he was pursuing or had pursued various actions in the Virginia courts. This state litigation is irrelevant to the question of whether Tippens exhausted his administrative remedies with respect to his present claims. Accordingly, the Motion for Relevant Evidence in Opposition to Defendants' Motion for Summary Judgment (ECF No. 68) will be denied.

By Memorandum Order entered on August 26, 2020, the Court filed Tippens's Second Amended Complaint. (ECF No. 35.) The Second Amended Complaint corrected the spelling of the names of the some of the defendants and added Defendant Edwards as a defendant to Claim G. It is apparent from the record before the Court that Claim G against Defendant Edwards is subject to dismissal because Tippens failed to exhaust his

14

administrative remedies prior to filing the action. Accordingly, within twenty (20) days of the date of entry hereof, Tippens must demonstrate why Claim G against Defendant Edwards should not be dismissed for lack of exhaustion. *See Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017) ("[D]istrict courts may enter summary judgment *sua sponte* 'so long as the losing party was on notice that she had to come forward with all of her evidence.'" ((quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))); Fed. R. Civ. P. 56(f).

The August 26, 2020 Memorandum Order directed the Clerk to issue process and the Marshal to attempt to serve Dr. Cortez Hernandez Martines. Accordingly, Tippens's motion seeking service on Defendant Martines (ECF No. 74) will be denied without prejudice.

Tippens has filed two more motions to amend. (ECF Nos. 80, 88.) Although not entirely clear, it appears that Tippens seeks to spackle additional claims onto the Second Amended Complaint. He may not do so. *See Williams v. Wilkerson*, 90 F.R.D. 168, 169–70 (E.D. Va. 1981). Moreover, any proposed amended complaint must set forth all the claims upon which Tippens seeks relief. Furthermore, it appears it would be futile to permit Tippens to amend unless he could demonstrate that he had exhausted his administrative remedies for the relevant claims prior to initiating the action. Accordingly, the motions to amend (ECF Nos. 80, 88) will be denied without prejudice.

Because it appears that Tippens's claims are subject to dismissal for failure to exhaust his administrative remedies, Tippens's motion for injunctive relief (ECF No. 75) will be denied.

Tippens has filed a number of motions seeking release in light of the COVID-19 pandemic. Tippens fails to demonstrate that such motions are properly considered in the present action and the motions (ECF Nos. 86, 90, 95) will be denied.

Tippens filed a motion seeking the entry of an order to prevent Defendants from transferring him to another institution. Tippens fails to demonstrate entitlement to such an order. Accordingly, his motion (ECF No. 99) will be denied.

Tippens's motion to set the matter for a pretrial conference (ECF No. 92) will be denied without prejudice.

## V. Conclusion

Defendants Motion for Summary Judgment (ECF No. 50) will be granted. Claims B through G against Defendants VDOC, Powell, Malone, Morgan, Hudgins, and Robinson will be dismissed without prejudice. Tippens's Motion for a Jury Trial (ECF No. 58) will be granted to the extent that the Clerk will note the jury demand on the docket, but, to the extent he seeks an immediate jury trial, the motion (ECF No. 58) will be denied. Tippens's remaining motions (ECF Nos. 48, 57, 64, 66, 68, 70, 74, 75, 78, 80, 86, 88, 90, 92, 95, 97, 99) will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                                /s/
                                  HENRY E. HUDSON

Date: Sept. 9, 2020         SENIOR UNITED STATES DISTRICT JUDGE
Richmond, Virginia